UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BERNARD JONES | CIVIL ACTION |
| VERSUS | NO. 07-3930 |
| SEWERAGE AND WATER BOARD OF NEW ORLEANS | SECTION "C"  (1) |

ORDER AND REASONS

This matter comes before the Court on motion for summary judgment filed by Sewerage and Water Board of New Orleans ("Board") and William Keck ("Keck"). Having considered the record, the memoranda of counsel and the law, the Court finds that summary judgment is appropriate for the following reasons.

**Undisputed facts**

The plaintiff, Bernard Jones ("Jones"), an African-American, filed this suit seeking damages for racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, The Louisiana Employment Law, La. Rev. Stat. 51:2256, *et seq.*, and 42 U.S.C. § 1981. The undisputed facts indicate that Jones was terminated from his probationary position of Technical Administrator in the Board's Networks

1

Department on February 14, 2005, at a time when Keck, who is Caucasian, was employed as Chief of Networks.

For purposes of this motion, it is also undisputed that:

(1)  Jones was hired as Technical Administrator on May 13, 2004, subject to a six-month probationary period.  He was encouraged to apply for the position by Marcia A. St. Martin ("St. Martin"), who is African-American and the Board's Executive Director;

(2)  Jones's immediate supervisor at all relevant times was Hon Nguyen (Nguyen"), who according to the plaintiff is Vietnamese;

(3)  Keck replaced Ron Spooner ("Spooner"), an African-American, as the Chief of Networks and as Jones's superior, in September 2004.  Keck reported to General Superintendent Joseph Sullivan ("Sullivan"), a Caucasian;

(4)  On September 30, 2004, Keck was informed by the Board's personnel department that Jones was due for consideration for permanent status as of November 12, 2004 (Rec. Doc. 28, Exh. 17);

(5)  After Keck initially recommended permanent status, he consulted with Sullivan about Jones, and Sullivan recommended that Keck terminate Jones;

(6)  On October 27, 2004, Keck wrote to personnel and rescinded his previous memo not to extend Jones's probationary period, instead requesting that the period be

extended six months (Rec. Doc. 28, Exh. 18);

(7) On November 1, 2004, Keck informed Jones that he had rescinded his initial decision to remove Jones from probation and had decided to extend Jones's probation by six months (Rec. Doc. 28, Exh. 19);

(8) Jones field an internal grievance regarding the extension of probation on November 15, 2004;

(9) On December 17, 2004, the Grievance Manager Bobby Nathan ("Nathan"), an African-American, recommended on behalf of the Grievance Committee that Jones be granted permanent status; no finding of racial discrimination is contained in the report (Rec. Doc. 28, Exh. 24);

(10) On December 21, 2004, St. Martin met with Jones and Keck and recommended that they, along with Nguyen, schedule an interpersonal skills training session (Rec. Doc. 28, Exhs. 2 & 24);

(11) No interpersonal skills training session involving Keck, Nguyen and Jones was scheduled;

(12) On January 26, 2005, Keck reprimanded Jones and Nguyen, and Jones subsequently advised Keck that he disagreed with the reprimand. (Rec. Doc. 28, Exhs. 28 & 29);

(13) On February 14, 2005, Sullivan recommended that Jones be terminated (Rec. Doc. 28, Exh. 33);

(14) St. Martin sent Jones a letter dated February 14, 2005, informing him of his termination effective February 25, 2005;

(15) Sullivan and St. Martin both assert without contradiction that Keck was not consulted the decision to terminate Jones;

(16) Sullivan and St. Martin were contemplating the removal of Keck as Chief of Networks at the time of Jones's termination;

(17) The Board sent Jones a letter dated February 21, 2005, and instructed him to immediately surrender all work property and advised that immediately after surrender, he is discharged from the Board premises and not allowed to re-enter any Board facility (Rec. Doc. 28, Exh. 35);

(18) Jones filed a charge of discrimination on February 24, 2005, claiming that his probation was extended because of his race and that he was terminated based on his race and in retaliation (Rec. Doc. 28, Exh. 37);

(19) Keck was removed as Chief of Networks on March 3, 2005;

(20) Jones filed a second charge of discrimination on March 8, 2005, claiming that his inability to re-enter Board facilities was based on race and in retaliation;l

(21) On July 28, 2005, an Administrative Law Judge issued the opinion that the Board failed to prove that Jones's poor performance was the result of willful or intentional negligence so as to deny him the right to benefits (Rec. Doc. 46, Exh. 11);

(21) On August 3, 2006, the EEOC made a determination that there was evidence of violations of the Civil Rights Act and recommended conciliation efforts be undertaken (Rec. Doc. 46, Exh. 12);  and

(22) This suit was filed on August 2, 2007.

It is also undisputed that Keck specified work-related shortcomings on the part of Jones with regard to the November 2004 rescission of permanent status and the January 2005 reprimand.  Similarly, Sullivan specified work-related deficiencies in terminating Jones. The record is replete with evidence that Keck and Jones did not get along and that Keck believed that Jones had a bad attitude toward work assignments and co-workers.

**Analysis**

A district court can grant a motion for summary judgment only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c).  When considering a motion for summary

(21) On July 28, 2005, an Administrative Law Judge issued the opinion that the Board failed to prove that Jones's poor performance was the result of willful or intentional negligence so as to deny him the right to benefits (Rec. Doc. 46, Exh. 11);

(21) On August 3, 2006, the EEOC made a determination that there was evidence of violations of the Civil Rights Act and recommended conciliation efforts be undertaken (Rec. Doc. 46, Exh. 12);  and

(22) This suit was filed on August 2, 2007.

It is also undisputed that Keck specified work-related shortcomings on the part of Jones with regard to the November 2004 rescission of permanent status and the January 2005 reprimand.  Similarly, Sullivan specified work-related deficiencies in terminating Jones. The record is replete with evidence that Keck and Jones did not get along and that Keck believed that Jones had a bad attitude toward work assignments and co-workers.

**Analysis**

A district court can grant a motion for summary judgment only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c).  When considering a motion for summary

judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." Reid v. State Farm Mut. Auto. Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986).  The court must find "[a] factual dispute ... [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party ... [and a] fact ... [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." Beck v. Somerset Technologies, Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing Celotex, 477 U.S. at 322-24). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. See Anderson, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50.

**Racial discrimination**

The parties apparently agree that the plaintiff's three claims are governed by the same standards applicable to Title VII claims.[1]  Title VII prohibits an employer from

---

[1] Claims unde Louisiana's Employment Discrimination Act are analyzed under the same standards as Title VII claims. *Johnson v. Louisiana*, 351 F.3d 616, 619 (5th

"failing or refusing to hire or ... [from] discharging, or otherwise discriminating against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  A plaintiff may prove discrimination under Title VII through direct or circumstantial evidence.  Nasti v. CIBA Specialty Chemicals Corp., 492 F.3d 589, 593 (5th Cir. 2007).

   A case of discrimination using circumstantial evidence uses the burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), which requires that a plaintiff bears the initial burden to prove a *prima facie* case of discrimination by a preponderance of the evidence.  This requires a demonstration that the defendant belonged to a protected group, was qualified for the position, suffered an adverse employment action and was replaced with a similarly qualified person not a member of his group, or in the case of disparate treatment, that similarly situated employees were more favorably treated.  Nasti, 492 F.3d at 593; Johnson v. Louisiana, 351 F.3d 616, 621 (5th Cir. 2003); Laxton v. Gap Inc., 333 F.3d 572, 579  (5th Cir. 2003); Blow v. City of San Antonio, Texas, 236 F.3d 293, 296 (5th Cir. 2001).

---

Cir. 2003);  *Nichols v. Lewis Grocer*, 138 F.3d 567, 566-567 (5th Cir. 1998).  Section 1981 claims of racial discrimination in employment are also analyzed under the evidentiary framework applicable to Title VII claims.  *Lawrence v. University of Texas Medical Branch at Galveston*, 163 F.3d 309 (5th Cir. 1999).

If a *prima facie* showing is made, the employer then bears the burden of articulating a legitimate, nondiscriminatory reason for its action.  St. Mary's Honor Center. v. Hicks, 509 U.S. 502, 506-07 (1993); Nasti, 492 F.3d at 593.  The defendant must state, "through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that the unlawful discrimination was not the cause of the employment action." St. Mary's, 509 U.S. at 507 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254- 55 (1981)) (emphasis original).

If the defendant articulates such a reason, the presumptions of the framework dissipate and the focus shifts to the ultimate question: whether the plaintiff can prove that the defendant intentionally discriminated against the plaintiff.  Nasti, 492 F.3d at 593. The plaintiff may show intentional discrimination by direct or circumstantial evidence of discriminatory intent.  Grimes v. Texas Dept. Of Mental Health & Mental Retardation, 102 F.3d 137, 140-41 (5th Cir. 1996).  This burden can be satisfied with evidence that the employer's reason is a pretext for discrimination, either through evidence of disparate treatment or by showing that the proffered explanation is false or unworthy of credence. St. Mary's, 509 U.S. at 511;  Nasti, 492 F.3d at 593.  The plaintiff may attempt to overcome the employer's proffered nondiscriminatory reason by providing evidence that the employer's legitimate, nondiscriminatory reason is merely pretextual.

The plaintiff "retains the ultimate burden of persuasion throughout the case."

Faruki v. Parsons S.I.P., Inc., 123 F.3d 315, 319 (5th Cir. 1997) (citing Burdine, 450 U.S. at 253).  A plaintiff can meet his burden of demonstrating pretext and thereby establish a jury issue to avoid summary judgment or judgment as a matter of law "if the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that [race, sex or national origin] was a determinative factor in the actions of which plaintiff complains." Vadie v. Mississippi State University, 218 F.3d 365, 374, fn 23 (5th Cir. 2000) (explaining that this analysis first formulated in Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 994 (5th Cir.1996), survives the Supreme Court's abrogation of Rhodes in Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000)).  A *prima facie* case and sufficient evidence of pretext would permit a court or jury to find unlawful discrimination, without additional independent evidence of discrimination, though such a showing will not always be adequate to sustain a jury's finding of liability.  Reeves, 530 U.S. at 142-49.

   Under 42 U.S.C. § 2000e(a), employers are prohibited from discriminating against an employee "because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  In order to make a *prima facie* case of retaliation, the plaintiff must prove (1) he was engaged in

protected activity; (2) the defendant took adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment activity. *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 705 (5th Cir. 1997).

**Analysis**

The defendants make several arguments with regard to summary judgment.

1. No *prima facie* showing of discrimination

For purposes of summary judgment, the defendants assume the plaintiff can establish the first three elements of a *prima facie* case, but challenge Jones's inability to show that he was replaced by a white male. The plaintiff argues that he is entitled to establish the fourth element with a showing that he was "otherwise discharged because of his [race]," under the rule announced in *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005). The Court's reading of that case supports the plaintiff's argument, and the defendant provides no authority to ignore the *Machinchick* case based on the fact that it involves an ADEA claim, when the Fifth Circuit analyzes the ADEA claim using the *McDonnell Douglas* framework.

Whether the plaintiff has presented proof that he was otherwise discriminated against because race is a distinct issue, however. The plaintiff looks to evidence that he complained of racial discrimination to the Grievance Committee, that Nathan testified in deposition that he believed that race was "incidently not directly" a factor in the

10

termination of Jones. (Rec. Doc. 46, Exh. D, p. 52). He also alleges that Jones made racist remarks in meetings.[2] The Court is not persuaded by the plaintiff's arguments.

The EEOC made a determination that the plaintiff was discriminatorily treated. (Rec. Doc. 46, Exh. 12). Such findings are not dispositive in subsequent suits. *Price v. Federal Express Corp.*, 283 F.3d 715, 725 (5th Cir. 2002). As in *Price*, the EEOC determination letter here was issued without any indication that anyone other than the plaintiff was interviewed. Hence, the letter is not dispositive.

Although it appears that the plaintiff is unable to present a *prima facie* case of discrimination, the Court will consider the other arguments made by the defendants.

2.      No *prima facie* case of retaliation

The defendants argue that the plaintiff can not establish a causal connection for purposes of the retaliation claim involving termination because it is undisputed that Sullivan and St. Martin did not rely on imput from Keck in making that decision and that, at the time, they were planning to remove Keck as Chief of Networks. Instead, the defendants argue, Sullivan and St. Martin based their decision on his prior work problems and their review of emails between Keck and Jones.

---

[2] The Court rejects the plaintiff's characterization as "racist" remarks made by Keck that Nguyen was a "Vietnamese engineer," that employees out on workman's compensation should have to come back to work because it is not a welfare office or that he would like to eat somewhere without being shot.

11

The plaintiff responds that there is support for his claim of retaliation in Keck's statements in response to the plaintiff's claims of discrimination that "To be called a racist is a very serious accusation" and "I am not a racist."  He also argues that the fact that Jones filed his race discrimination grievance in November 2004 and was fired in February 2005 is also evidence that the requisite causal connection existed, as is St. Martin's knowledge of the grievance.  The Court is not persuaded that any of these facts are relevant to the issue and finds that the causal connection required for a claim of retaliation is lacking as a matter of law.

The defendants also challenge any claim that its decision to bar Jones from re-entering  Board facilities after his termination was retaliatory.  They argue that the Board has a policy that involuntarily separated employees are not allowed to re-enter work space facilities.  The plaintiff does not appear to oppose this argument.  The Court finds that any claim regarding the post-termination bar from reentering the Board's facilities is not actionable.  Similarly, the plaintiff has not identified any protected activity that preceded the extension of his probation.

3. Extension of probation based on legitimate nondiscriminatory reason
4. Termination based on legitimate nondiscriminatory reason

The defendants next argue that they have successfully articulated a legitimate, nondiscriminatory reason for its actions in extending the probation and terminating the

plaintiff. They specify the documentation from Keck that additional probation was warranted because Keck had difficulties in getting Jones to perform tasks and had received complaints from co-workers, facts which the defendants argue Jones does not dispute. They also argue that his termination is supported by undisputed and documented performance shortcomings.

 The plaintiff opposes with the argument that this case is arguably a "mixed motive" case, where both legitimate and non-legitimate reasons warranted the employment decision. *Desert Palace, Inc. v. Costa*, 539 U.S. 90,93 (2003). Jones argues that he has produced circumstantial evidence that the defendant's proffered nondiscriminatory reasons are false and that race was a motivating factor in the employment decisions. He specifically argues that he has presented proof that, with regard to an incident involving fire hydrants, he was not resisting work but, rather, was following the directions of his immediate supervisor, Nguyen. He also relies on unspecified evidence of discrimination and specifically, that Keck would accept the views of Caucasian employees without asking Jones.

 The plaintiff fails to address the other performance deficiencies upon which the defendants relied and the Court is left with a record that contains undisputed work problems on the part of the plaintiff. The email exchanges regarding the scheduling of the interpersonal training and the inspection of the fire hydrants indicate to the Court an

13

inappropriately resistant attitude by Jones to the instructions of a supervisor. The record establishes that Keck and Jones disliked each other. That fact, alone or in combination with the fact that the two are of different races, does not suffice to avoid summary judgment on the issue that legitimate nondiscriminatory reasons, namely Jones's perceived resistence to instruction, do support the defendants' decisions.

5. No showing of pretext for discrimination or retaliation claims

Next, the defendants argue that Jones can not establish that their articulated reasons are pretext for racial discrimination or retaliation. They also argue that the Board's good faith belief that Jones refused to perform work overcomes any showing of pretext. Even an incorrect belief concerning the inadequacy of an employee's performance constitutes a legitimate, nondiscriminatory reason. *Mayberry v.Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995). Finally, the defendants argue that they are entitled to the "same actor" inference that discrimination is not involved when the plaintiff is hired by the same person who fired him. *Brown v. CSC Logic, Inc.*, 82 f3d 651, 658 (5th Cir. 1996). In this case, the plaintiff does not dispute that St. Martin, who is African-American, encouraged the plaintiff's hiring and that it was St. Martin also who agreed that Jones's probation should be extended and who made the decision that Jones be terminated. (Rec. Doc. 28, Exh. 2). The Court finds that the plaintiff fails to present an adequate showing of pretext for purposes of summary judgment.

6.      Ultimate burden of persuasion regarding discrimination or retaliation not met

Finally, the defendants argue that Jones can not meet the ultimate burden of persuasion and that any Section 1981 claim regarding the termination against Keck as an individual must be dismissed, based on *Richard v. Bell Atlantic Corp.*, 946 F.Supp. 54, 74 (D.C.D.C. 1996).  See *Celestine v. Aaron Rents, Inc.*, 2007 WL 2703133 (W.D.La.)(M.J.Hill).[3]  The plaintiff does not directly address this issue.

Accordingly,

IT IS ORDERED that the motion for summary judgment filed by Sewerage and Water Board of New Orleans and William Keck is GRANTED.  (Rec. Doc. 28).

IT IS FURTHER ORDERED that the motion in limine filed by Sewerage and Water Board of New Orleans and William Keck is DISMISSED AS MOOT.  (Rec. Doc. 27).

New Orleans, Louisiana, this 9th day of June, 2008.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE

---

[3]      In addition, the issue whether Title VII supersedes any Section 1981 claim has not been raised.  *Evans v. City of Houston*, 246 F.3d 344 (5th Cir. 2001); *Thompson v. Louisiana*, 2006 WL 1995796 (E.D.La.).

15